UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACCU-TECH CORP.,

       Plaintiff(s),

v.

HIRAM JACKSON, ET AL.,

       Defendant(s).

_____/

Case No. 03-71575

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [111]**

Defendant Donald Barr ("Barr") has brought a motion seeking summary judgment on all counts against him.  To resolve this motion, the Court must determine to what extent officers and principals can be held liable for actions of a corporation under the Michigan Builders' Trust Fund Act, MICH. COMP. LAWS §§ 570.151 et seq. ("MBTFA").  Because there is no genuine issue regarding whether Barr can be personally liable and for the reasons set forth more thoroughly below, the Court GRANTS the motion.

**I.     Factual and Procedural History**

Clover Technologies, Inc. ("Clover") installs data network infrastructures including voice and video distribution systems for building construction projects.  Am. Compl. ¶ 9. Clover was experiencing financial difficulties and, in 2000, entered into a factoring agreement with Defendant Greenfield Commercial Credit ("Greenfield"), an entity that assists companies stabilize their cash flow.  Am. Compl. ¶¶ 15, 18; Pl.'s Ex. 1 (Factoring Agreement).  Then, after defaulting, Clover entered into another agreement with Greenfield

surrendering all of its "Collateral."[1]  Pl.'s Ex. 8 (Surrender and Liquidation Agreement).  To

some extent, after this agreement, Greenfield exercised control over Clover's operations.[2]

     Barr is tied to Greenfield.  Specifically, a trust he set up is one of the five Greenfield

owners.  Barr. Aff. ¶ 2.  In addition, he is a part owner and officer (the President) of GCC

Management ("GCC"), the corporation that manages Greenfield.  Id. ¶¶ 3, 4.[3]

     Plaintiff Accu-Tech Corporation ("Accu-Tech"), a seller of products related to or

necessary for data network infrastructures, was one of Clover's suppliers.  Akins Aff. ¶¶ 2,

3.  Clover began purchasing these products in 1994 and continued through December of

2000.  Id. ¶ 3; Am. Compl. ¶ 10.  In 2002, however, Clover stopped remitting payments for

the materials it had ordered.  Akins Aff. ¶ 4.  Accu-Tech then filed a complaint against

---

[1]"Collateral" is defined in the Factoring Agreement and includes, for example, all accounts, inventory, equipment, and investment property.  Factoring Agreement at 1.

[2]   The extent of Greenfield's involvement is unclear.  Plaintiff relies on an email message from Ronald Valentine, First Vice President of Standard Federal Bank, which states that "Greenfield is essentially running the company day to day . . . ."  Pl.'s Ex. 9 (February 7, 2003 email message from Valentine).  Plaintiff has not shown, however, why this evidence should not be considered hearsay.

    Barr nonetheless admits that Greenfield was active in some of Clover's business decisions.  For instance, he states that Greenfield employees "reviewed Clover's records" and made recommendations about them.  Barr. Aff. ¶ 10.  He also admits "participat[ing] in the decisions regarding which of Clover's in-progress jobs Greenfield would fund to completion" and specifically approving payment to Clover's landlord.  Id. ¶¶ 10, 11.  However, he denies involvement in "the day-to-day management of Clover's business or finances."  Id. ¶ 12.

[3]Because Greenfield is a limited liability company, it is given more discretion than a corporation in structuring the entity's organization.  As noted, GCC, a corporation, manages Greenfield.  Barr is the President of GCC.  Thus, he retains control analogous to an officer or a member of the board of directors in a corporate management scheme.  Moreover, Barr signed contracts on behalf of Greenfield designating himself as its "President."  *See*, *e.g.*, Factoring Agreement at 17.

Greenfield, Barr and others alleging violations of the MBTFA and common law conversion. Barr then brought a motion for summary judgment on all counts against him.

## II.   Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

3

### III.  Analysis

The MBTFA, enacted in 1931, was created as a penal statute.  *B.F. Farnell Co. v. Monahan*, 141 N.W.2d 58, 60-61 (Mich. 1966); *see also Diponio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 62 (Mich. App. 2001)(holding that the MBTFA "does not expressly provide a civil cause of action").  Specifically, section one states that building contract funds paid to a contractor constitute a trust for the benefit of laborers, subcontractors, materialmen, etc. MICH. COMP. LAWS. § 570.151.[4] Section two then states that a contractor who does not first pay laborers, subcontractors, materialmen, etc. with those funds will face criminal penalties.  MICH. COMP. LAWS. § 570.152.[5] Michigan courts

---

[4]Section one, in its entirety, states that

> [i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

MICH. COMP. LAWS. § 570.151.

[5]Specifically, pursuant to section two of the act,

> [a]ny contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than one hundred dollars or more than five thousand dollars and/or not less than six months nor more than three years imprisonment in a state prison at the discretion of the court.

4

have, however, recognized a civil remedy inherent in the MBTFA.  *See B.F. Farnell Co.*, 141 N.W.2d at 60-61.

The issue at the heart of this case is the extent to which an officer or director of a corporation may be held civilly liable under the MBTFA.  The Michigan Supreme Court has not addressed the issue.  Michigan courts of appeals have found, however, that a corporate officer may be convicted.  *See*, *e.g.*, *People v. Brown*, 610 N.W.2d 234 (Mich. Ct. App. 2000).  The reasoning from criminal MBTFA cases cannot generically be transferred to civil cases brought against officers because, to be convicted under the statute, the defendant must possess an "intent to defraud."  MICH. COMP. LAWS § 570.152.

The Second Circuit has found that such an officer can be held personally liable in a civil action.  *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  In that case, however, the court did not provide any reasoning why the officer should be held personally accountable.  *See id.* at 65.  Moreover, the case involved a defendant who engaged in fraudulent activity by certifying that payments were made to subcontractors when he knew they were not.  *Id.*

In this case, Barr signed an agreement that gave Greenfield (as a "Co-Purchaser") a "ratable share" in payments made by Clover's "account debtors."  Pl.'s Ex. 4 (Co-Purchasers Agreement) at 2.  There is no evidence, however, that he was aware that subcontractors were first entitled to the payments, that he personally retained the funds, or that he engaged in any fraudulent activity.  The MBTFA was not created to hold Barr and officers acting with legitimate business purposes personally liable.

---

MICH. COMP. LAWS. § 570.152.

5

This does not leave Accu-Tech without a remedy.  It still has an action against Clover and Greenfield.  If Barr had stripped Greenfield of all its assets, leaving Plaintiff with no means to recoup its loss, a cause of action may lie.  In this case, however, finding Barr personally liable under the MBTFA for merely signing a legitimate contract on behalf of Greenfield would undermine the corporate structure.  The Court need not define the parameters for when an individual officer may be personally liable under the statute; it is sufficient here to say that there is no genuine issue regarding Barr's liability.  Thus, his motion for summary judgment must be granted.

Accu-Tech also claims that Barr is liable for conversion.  This tort requires a defendant to exercise dominion over another's property.  *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638, 640 (Mich. Ct. App. 1982).  Like the MBTFA claim, there is no evidence that Barr took control of Accu-Tech's property or even that he actively assisted in any conversion.  Thus, summary judgment is also warranted on this claim.

## IV. Conclusion

For the reasons stated above, the Court hereby orders that Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 9, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 9, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

6